HAROLD C. MURRAY *vs.* P. BALLANTINE & SONS.

DECEMBER 31, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

14

BAKER, J.    This is an action of trespass on the case for negligence.    After a trial in the superior court a jury returned a verdict for the plaintiff for $1500.    The trial justice granted defendant's motion for a new trial unless the plaintiff remitted all of the verdict in excess of $650.    Such remittitur was filed but the defendant nevertheless duly prosecuted its bill of exceptions to this court.    The exceptions now relied on are to the refusal of the trial justice to direct a verdict in its favor and his failure to grant a new trial unconditionally.    All other exceptions not briefed or argued are deemed to be waived.

In his declaration the plaintiff alleges in substance, among other things, that he purchased from a certain distributor or retailer for a monetary consideration a quart bottle of beer bottled by the defendant and sealed with its cap; that by reason of the carelessness and negligence of the defendant the contents of such bottle were wholly unfit for human consumption in that they contained certain foreign substances, namely, "fine fragments of wood, hair and cotton fibers similar to dust sweepings" and that after consuming some of the beer the plaintiff became sick, suffered pain, incurred expense and lost money he otherwise would have earned.    In response to the defendant's motion for more detailed information respecting the plaintiff's alleged damage as stated in his declaration the latter filed a bill of particulars setting out, among other things, that he "suffered an acute Gastroenteritis with diarrhea * * *."

Evidence on behalf of the plaintiff, who simonized automobiles for a living, showed that in the early evening of

January 28, 1947 he purchased at a neighborhood package store in Providence a quart bottle of the defendant's beer properly sealed and capped. He immediately took this bottle to the nearby home of a friend and soon after his arrival he opened the bottle and, without removing it from the paper bag in which the storekeeper had placed it, poured part of the contents into a clean glass with which he had been supplied by his friend's wife. He was thirsty and took a mouthful of the beer which he then proceeded to drink in about three swallows. He testified that on the second swallow he felt something thick pass down his throat and in a minute or two thereafter had a burning sensation; that he drank no more of the beer and soon was nauseated and felt very ill; that he looked into the glass and saw nothing unusual but when he examined the bottle he saw what appeared to be a considerable amount of dirt and foreign substance therein and a sort of web on the side of the bottle near the bottom. His friend's wife also looked at the bottle and stated in her testimony that its contents were very dirty.

The plaintiff returned the bottle at once to the storekeeper, who testified in substance that the beer was not clear; that something was floating on the top of it; and that some foreign substance was on the bottom of the bottle which he retained and showed to the defendant's salesman when he next called. The plaintiff poured the beer that remained in the glass from which he had drunk into a small clean cream bottle which he took with him when, within a short time, he went to his home feeling somewhat ill. That evening and for several days thereafter plaintiff was attended at his home by a doctor. Later he went to the doctor's office for further treatment. At the trial the plaintiff complained of still feeling the effects of his illness and stated that he had been compelled to remain out of work for a number of weeks.

No further evidence was admitted showing exactly what foreign substances were in the bottle in question. The de-

fendant presented evidence tending to prove that it exercised due care in bottling its beer; that in connection therewith modern methods and machinery were used; and that its beer was pasteurized as part of its bottling process. At the conclusion of all the evidence the defendant moved that a verdict be directed in its favor. In support of that motion, which was denied by the trial justice, the defendant urged the following grounds: first, that the evidence did not support the plaintiff's allegation of negligence, particularly in respect to the nature of the foreign matter in the bottle; second, that there was no evidence of negligence on the part of the defendant; and, third, that there was no evidence that the plaintiff's damage was caused by defendant's alleged negligence. Assuming for the purposes of argument that the plaintiff successfully answered the first two grounds of defendant's motion, we are of the opinion that the third ground requires further consideration.

In our judgment the issue raised by the last-mentioned ground must be determined by an examination of the testimony of two doctors, one of whom testified for the plaintiff and the other for the defendant. The former, the plaintiff's family physician, was called to his home about nine o'clock in the evening of January 28, 1947 and examined him. This doctor stated that the plaintiff was nervous and complained of spells of nausea, cramps, a distressed and heavy feeling in his stomach and soreness there. For this condition bismuth and scalded milk were prescribed to allay gastric irritation.

This doctor also testified as follows: "Q. Did you get a history of the case doctor? A. Yes. Mr. Murray told me what happened. Q. Did you see anything there that may have caused his condition? A. No, I did not." Further, in cross-examination he gave the following testimony: "Q. You prescribed for him that night? A. Yes. Q. Gastroenteritis? A. Yes. Q. And that, doctor, is a disease, a condition that comes from bacteria, that's right, isn't it? A. Yes. Q. And coming from bacteria, it could come from

anything you eat, or anything you ingest in your stomach? A. True. Q. After you ingested it, and in your stomach, that bacteria has to have an incubation period; is that right? A. Yes. Q. And that incubation period, doctor, is how long? A. Well, that I'm unable to say. Q. Well, doctor, is it twenty-four hours, forty-eight hours? A. I would say twenty-four, forty-eight hours, yes. Q. Certainly more than one hour? A. Yes."

Another doctor, called on behalf of the defendant, testified that he had never examined the plaintiff. However, he qualified as an expert medical witness and stated that gastroenteritis is a bacterial disease causing inflammation of the stomach and intestines and is commonly brought about by the ingestion of food. He then continued his testimony as follows: "Q. And assuming that food is ingested, having that bacteria, how long an incubation period would there have to be before any condition? A. Always an incubation period, and that incubation period usually is at least twenty-four hours, and very often is a day and a half to two days. So that a person taken ill with acute dysentery, his illness is more apt to be due to something he ate at the preceding day, or before that, the day he was taken ill." In cross-examination this doctor made the following statement: "Q. Assuming, doctor, this plaintiff drank a half glass, of ten or twelve ounces of beer, and felt something heavy go by the palate down his throat, could it upset his stomach to such a point he could throw up? A. That's possible. If a person discovered some foreign object in a beverage, they might have a sense of nausea, psychic or mental, they might even gag or throw up, particularly if the person was a very sensitive individual. But that effect would only be transitory and it would not cause diarrhoea, cramps, temperature, and various symptoms of gastro-enteritis. Simply a mental sense occurring at that time and lasts for a few minutes." He also testified that he was convinced the alleged happening could not have caused the

plaintiff's illness but that it was probably due to something he had eaten the previous day.

After careful consideration of all the evidence bearing on the question whether the plaintiff's alleged illness and damage were caused by the defendant's negligence, we have come to the conclusion that the plaintiff has failed to submit any evidence showing that to be the case in whole or in part. Such causal connection is a vital element of the plaintiff's case and in our opinion it is lacking in the present record, taking into consideration the allegations of the declaration, the proof submitted thereunder in relation to the illness upon which he relied to recover damages and in particular the medical testimony including that of his own physician.

In fact the plaintiff's evidence without contradiction shows that the illness from which he suffered was caused by bacteria which required from twenty-four to forty-eight hours' incubation and which would not possibly affect him within a few hours after drinking the beer, as was his claim here. In other words, the condition complained of and relied on antedated the drinking of the beer. Moreover, the whole case was tried on the theory that plaintiff's condition was due *entirely* to ingestion of the beer. There was no allegation or evidence by him that such condition, which according to the uncontradicted medical evidence was caused by bacteria previously ingested, was aggravated by drinking the beer thereafter. We find, therefore, that the trial justice was in error in denying the defendant's motion for a directed verdict, and its exception to that ruling is sustained.

The plaintiff may appear before this court on January 14, 1949, to show cause, if any he has, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

ON HEARING TO SHOW CAUSE.

JANUARY 26, 1949.

PER CURIAM. In this case the plaintiff was given an op-

portunity to appear before this court at a specified time to show cause, if any he had, why the case should not be remitted to the superior court for the entry of judgment for the defendant in accordance with our opinion theretofore filed.

The plaintiff, through his attorney, appeared at such time and presented reasons in support of his contention that the case should not be so remitted. The principal reasons advanced by him plainly relate to evidence that was not a part of the record, and otherwise he has failed to show any cause, based on the existing record, why the case should not be remitted to the superior court for final disposition as set out in our opinion.